1 | SEGALSKIGEN LLP
LAWRENCE SEGAL (101339)
2 | WAYNE D. SKIGEN (100249)
9595 Wilshire Blvd., Suite 201
3 | Los Angeles, CA 90212-2504
(310) 550-4840
4 | lawrence@legalsegal.com
wayne@legalsegal.com
5 |
and
6 |
KUMAGAI LAW GROUP PC
7 | DUANE KUMAGAI (125063)
1901 Avenue of the Stars, Suite 1900
8 | Los Angeles, California 90067-6020
(310) 461-1625
9 | dkumagai@klgla.com
10 | Co-counsel for Plaintiffs Colette McDougall,
Richard W. Colburn, Carol Colburn Grigor
11 | and Keith W. Colburn
12 |

13 | UNITED STATES BANKRUPTCY COURT

14 | NORTHERN DISTRICT OF CALIFORNIA

15 | SANTA ROSA DIVISION

| In re | Chapter 7 |
|---|---|
| JACQUELINE ANN COLBURN, A/K/A JACQUELINE ANN GASSER. | Case No.: 13-10210-AJ |
| Debtor | Adv. No.: |
| COLETTE MCDOUGALL, RICHARD W. COLBURN, CAROL COLBURN GRIGOR AND KEITH W. COLBURN, | **ADVERSARY COMPLAINT FOR EXCEPTION TO DISCHARGE OF DEBT FOR WILLFUL AND MALICIOUS INJURY TO ANOTHER (11 U.S.C. § 523(a)(6))** |
| Plaintiffs, | |
| vs. | |
| JACQUELINE ANN COLBURN, A/K/A JACQUELINE ANN GASSER. | |
| Defendant | |

ADVERSARY COMPLAINT FOR EXCEPTION TO DISCHARGE

Plaintiffs Colette McDougall ("Colette"), Richard W. Colburn ("Richard W"), Carol Colburn Grigor f/k/a Carol Colburn-Hogel ("Carol") and Keith W. Colburn ("Keith") (collectively, "Plaintiffs") allege as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334(b), 11 U.S.C. § 523(a) and U.S. Bankruptcy Court General Order 266.

2. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I).

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4. This adversary proceeding relates to the above-captioned voluntary chapter 7 case of Debtor and Defendant Jacqueline Ann Colburn, a/k/a Jacqueline Ann Gasser ("Defendant") filed on January 31, 2013.

## PARTIES

5. Plaintiffs are judgment creditors of Defendant holding unsecured claims in the aggregate principal amount of $4,051,789.91.

6. Colette, an individual, is and at all times relevant was a resident of the County of Los Angeles, State of California. Colette is a judgment creditor of Defendant with an unsecured claim in the principal amount of $1,070,322.59.

7. Richard W, an individual, is and at all times relevant was a resident of the State of Illinois. Richard W is a judgment creditor of Defendant with an unsecured claim in the principal amount of $1,646,622.26.

8. Carol, an individual, is and at all times relevant was a resident of Scotland, United Kingdom. Carol is a judgment creditor of Defendant with an unsecured claim in the principal amount of $473,622.88.

9. Keith, an individual, is and at all times relevant was a resident of the State of Illinois. Keith is a judgment creditor of Defendant with an unsecured claim in the principal amount of $861,222.18.

10. Defendant, an individual, is and at all times relevant was a resident of the State of California, and the Debtor in the instant chapter 7 bankruptcy case.

2

ADVERSARY COMPLAINT FOR EXCEPTION TO DISCHARGE

# FACTUAL BACKGROUND

## Relationships to Richard D. Colburn

11.     The late Richard D. Colburn ("Richard D") was an entrepreneur and well-known Los Angeles philanthropist.  At all times relevant, Richard D lived at 1120 La Collina Drive, Beverly Hills, California (the "Residence").

12.     At all times relevant, Colette was employed as either the personal assistant to Richard D or the property manager for the Residence and, in that capacity, reported to Richard D.

13.     Richard W and Keith are the adult sons of Richard D.

14.     Carol is the adult daughter of Richard D.

15.     In May 1998, Defendant, then 38 years old, married Richard D, then 85 years old, and thereby became Richard D's eighth wife.

## Wiretapping and Recording of Calls

16.     Approximately 18 months later, in or around December 1999, Defendant retained a divorce attorney who suggested that Defendant hire the services of private investigator Anthony Pellicano ("Pellicano").  In mid-December 1999, Defendant met directly with Pellicano in the presence of her divorce attorney, but initially declined to hire him at that time.

17.     By bribing Pacific Bell employees to provide access to proprietary phone company systems and databases, Pellicano was able to place wiretaps on the telephone landlines serving the Residence (including those serving Richard D's home office at the Residence).  Pellicano used the wiretaps to intercept incoming and outgoing calls to and from the Residence and utilized proprietary software called TeleSleuth to record the intercepted telephone conversations and to store those recordings on computer hard drives at Pellicano's office.  The TeleSleuth wiretapping software, once implemented, automatically recorded all incoming and all outgoing calls on the wiretapped telephone lines.

18.     In late-December 1999, Pellicano called Defendant and invited her to his office in Beverly Hills.  He told Defendant that he had something of interest that she should hear.  When

3

ADVERSARY COMPLAINT FOR EXCEPTION TO DISCHARGE

she arrived, Pellicano played an audio recording of Richard D and another woman engaged in a telephone conversation of a graphic sexual nature. Defendant promptly hired Pellicano, paying him with two checks, both dated December 29, 1999, totaling $15,000.

19.     Over the course of approximately two and one-half weeks thereafter, Defendant returned each day to Pellicano's office, and with the assistance and knowledge of Pellicano and Pellicano's employees, utilized headphones to listen to recorded calls to and from the Residence.

20.     In January 2000, contemporaneously with her then daily visits to Pellicano's office, Defendant paid Pellicano an additional $100,000 by way of a cashier's check dated January 6, 2000.

21.     In addition to paying him cash totaling at least $115,000, Defendant gave Pellicano jewelry worth an estimated $500,000. In January 2000, she further confirmed Pellicano's retention as her agent by executing a Limited Power of Attorney appointing Pellicano as her "attorney-in-fact." Notably, ***Defendant paid Pellicano and executed the Limited Power of Attorney after becoming aware that Pellicano was engaging in illegal wiretapping of the Residence***.

22.     From December 1999 through at least August 2000, with Defendant's knowledge and ratification, Pellicano's remote wiretapping system recorded all calls to and from the Residence, day and night, including hundreds of private calls between and among Plaintiffs, on one hand, and Richard D and others at the Residence, including calls involving business associates, doctors, lawyers and other advisors and confidantes. Pellicano and Defendant at all times kept their eavesdropping and recordings secret from Plaintiffs.

23.     In May 2000, Defendant filed for divorce from Richard D.

24.     Defendant, who had occupied the Residence with Richard D since 1997, moved out of the Residence in or around August 2000.

25.     Defendant boasted to one of her massage therapists that she had hired the "best investigator in Los Angeles" who was wiretapping the Residence (both before and after she vacated the Residence) to obtain information that would be advantageous to her in her divorce

ADVERSARY COMPLAINT FOR EXCEPTION TO DISCHARGE

from Richard D.  Such admissions establish that the wiretapping and recording of calls to and from the Residence continued through at least August 2000.  An initial marital settlement agreement was entered by Defendant and Richard D in October 2000, and Pellicano continued to act on Defendant's behalf until at least the execution of that marital settlement agreement.

26.     In January 2002, the divorce of Defendant and Richard D became final.

**FBI Raid**

27.     In late 2002, the FBI raided Pellicano's offices and found hand grenades, plastic explosives, large amounts of cash and jewels, and a room full of computers connected to phone jacks.  Agents seized, among other things, records, computers, hardware, files, and other evidence that suggested wide-ranging wiretapping.  They then conducted extensive interviews of Pellicano's employees and clients.

28.     The FBI interviewed Defendant in May 2003.  Defendant admitted to the FBI that she:  (a) had retained Pellicano, (b) knew of Pellicano's wiretapping of the Residence, (c) knew that wiretapping is illegal, and (d) never instructed Pellicano to stop.  She also told the FBI that she had strained relations with Richard W, Carol and Colette, and that Pellicano told her that she needed to be able to anticipate Richard W's and Carol's next move.  The FBI contemporaneously memorialized Defendant's admissions and statements in an FBI Form 302 interview report.

29.     On June 3, 2004, Richard D died.

**Plaintiff's Discovery of Defendant's Illegal Conduct**

30.     On May 20, 2007, an article appeared in the New York Times, discussing Pellicano's extensive history of illegal wiretapping on behalf of "A-list" Hollywood celebrities and other high-net-worth individuals.  The New York Times reported that Pellicano and more than one dozen co-conspirators had been arrested.  The subject article featured a diagram depicting the relationships between Pellicano, his clients, and their respective wiretapped targets.  The diagram identified and depicted Defendant as a Pellicano client, and Richard D as the wiretapped target in connection with a high-stakes divorce proceeding.

31.     Plaintiffs read the Times article on or after May 20, 2007, when a third party

ADVERSARY COMPLAINT FOR EXCEPTION TO DISCHARGE

forwarded a copy of the article to Richard W.  Plaintiffs had made calls to, and received calls from, the Residence frequently during the time that Defendant was utilizing Pellicano's services.  Based on the article, they suspected – for the first time – that their calls to and from the Residence had been secretly wiretapped and recorded.  Plaintiffs retained counsel to conduct an investigation.

32.    Prior to May 20, 2007, Plaintiffs did not know or have any reason to suspect that their private and confidential conversations were being recorded.  Plaintiffs never consented to the recording of their telephone conversations or to allowing anyone to listen to them.  At all times, Plaintiffs intended for their telephone conversations to be confidential and not overheard or recorded by anyone.

### Superior Court Action

33.    On December 4, 2007, Plaintiffs filed a civil action in Los Angeles Superior Court against Defendant and Pellicano, alleging invasion of privacy under common law, invasion of privacy under of California Penal Code, Part 1, Title 15, Chapter 1.5, including but not limited to sections 631, 632, 632.5, 632.6, 632.7 and 637.2, commonly known as "The Invasion of Privacy Act," and other causes of action.  The action was entitled *Colette McDougall et al v. Anthony Pellicano, Jacqueline Colburn, et al.* (Case No. BC 381720).

34.    On March 25, 2010, Plaintiffs filed a First Amended Complaint in the Superior Court action.  Defendant answered by general denial and defended the action through trial.

35.    In 2008, a federal jury convicted Pellicano on 67 counts of criminal wiretapping, conspiracy, identity theft, bribery, and RICO violations stemming from his wiretapping and related illegal activities.  The court sentenced him to 15 years in prison.  After Plaintiffs personally served Pellicano, Pellicano failed to respond to the First Amended Complaint, and the clerk entered Pellicano's default prior to trial.

### Superior Court Judgment – Basis for *Res Judicata* and Collateral Estoppel

36.    Over the course of a nine-day jury trial in October 2012, witnesses testified that Defendant:  (a) knew of Pellicano's wiretapping and recording of the telephone lines serving the Residence, (b) ratified such conduct, and confirmed his retention as her agent, by paying him,

ADVERSARY COMPLAINT FOR EXCEPTION TO DISCHARGE

executing the Limited Power of Attorney and continuing to utilize his services after learning of his illegal activity, and (c) personally participated in eavesdropping and/or listening to recorded telephone conversations on headphones at Pellicano's office.

37.     The jury rendered special verdicts finding Defendant and Pellicano liable to Plaintiffs for common law invasion of privacy, and for damages for emotional distress in connection therewith, and for violations of California Penal Code § 631., *et seq.* and for statutory damages thereunder.

38.     The jury's special verdicts in favor of Plaintiffs established that:

a.     Plaintiffs' claims were not time-barred under the statute of limitations;

b.     Plaintiffs each had a reasonable expectation of privacy in their telephone calls to and from the Residence;

c.     Pellicano, acting on behalf of Defendant, intentionally eavesdropped and recorded Plaintiffs' telephone calls;

d.     Pellicano, acting on behalf of Defendant, did so without the call participants' consent;

e.     The intrusions arising from the conduct would be highly offensive to the reasonable person;

f.     The conduct of Pellicano, acting on behalf of Defendant, was a substantial factor in causing harm to each Plaintiff;

g.     Pellicano, acting on behalf of Defendant, illegally wiretapped eavesdropped upon or recorded Plaintiffs' calls, entitling Plaintiffs to damages measured by a statutory penalty of $5,000 per call;

h.     The conduct of Pellicano, acting on behalf of Defendant, was a substantial factor in causing non-economic injury to each Plaintiff, including emotional distress, determined to be $150,000 for each Plaintiff; and

i.     None of the Plaintiffs had discovered, or knew of, facts that would have caused a reasonable person to suspect, that he or she had suffered the claimed harm prior to December 4, 2005.

7

ADVERSARY COMPLAINT FOR EXCEPTION TO DISCHARGE

Attached as **Exhibit 1** and incorporated by reference is a true copy of Jury Verdict Form No. 1 rejecting the statute of limitations defense. Attached as **Exhibit 2** and incorporated by reference is a true copy of Jury Verdict Form No. 2. Attached as **Exhibit 3** and incorporated by reference is a true copy of Jury Verdict Form No. 3. Jury Verdict Form Nos. 2 and 3 establish the elements of Plaintiffs' claims of common law and statutory invasion of privacy.

39. On November 19, 2012, based upon the jury's findings and awards, the Superior Court entered judgment (the "Superior Court Judgment") in favor of Plaintiffs and against Defendant and Pellicano, jointly and severally, in the amount of $3,972,343.29. The Superior Court Judgment includes an award of costs in the sum of $77,343.29. Attached as **Exhibit 4** and incorporated by reference is a true copy of the Superior Court Judgment. Post-judgment interest on the Superior Court Judgment accrues, by California law (Code of Civil Procedure § 685.010), at the rate of 10% per annum.

40. On January 15, 2013, Defendant appealed the Superior Court Judgment to the California Court of Appeal. The appellate case is designated California Court of Appeal Case No. B246550, entitled *McDougall, et al. v. Colburn*.

41. On January 31, 2013, Defendant commenced the instant voluntary chapter 7 case, triggering an automatic stay of the appeal and enforcement of the Superior Court Judgment.

## FIRST CLAIM FOR RELIEF

(All Plaintiffs against Defendant for Exception to Discharge of Debt

for Willful and Malicious Injury to Another (11 U.S.C. § 523(a)(6)))

42. Plaintiffs incorporate by reference each and every allegation of paragraphs 1 through 41, above.

43. At all times relevant, Pellicano was the duly authorized agent of Defendant, acting on her behalf, with her knowledge and consent, pursuant to a power-of-attorney

44. In wiretapping the Residence and recording telephone calls to and from the Residence, to which Plaintiffs were parties, Pellicano acted within the course and scope of his role as the duly authorized agent of Defendant, who ratified his conduct.

8

ADVERSARY COMPLAINT FOR EXCEPTION TO DISCHARGE

45.     Defendant knowingly authorized, consented to, condoned and allowed Pellicano's wiretapping of the Residence and recording of Plaintiffs' telephone calls to and from the Residence. After learning of such wrongful and intentional conduct by Pellicano, Defendant ratified his actions and conduct by:

        a.    Paying and continuing to pay Pellicano for wiretapping and recording Plaintiffs' conversations;

        b.    Listening to recordings and otherwise accepting the illicit benefits of the conduct;

        c.    Executing a written power-of-attorney in favor of Pellicano, making him her agent to act on her behalf, knowing that he was engaging in wiretapping activity; and

        d.    Failing to terminate Pellicano after learning of his illegal conduct.

46.     By the above-described conduct, Defendant, personally and through her agent, Pellicano, intentionally intruded upon the private conversations of Plaintiffs and thereby willfully invaded Plaintiffs' privacy, acted in a highly-offensive and injurious manner, and caused injury, including emotional distress, to Plaintiffs.

47.     By the above-described conduct, Defendant, personally and through her agent, Pellicano, violated the provisions of California Penal Code, Part 1, Title 15, Chapter 1.5, including but not limited to sections 631, 632, 632.5, 632.6, 632.7 and 637.2.

48.     Defendant's conduct was willful and malicious within the meaning of 11 U.S.C. § 523(a)(6), and proximately caused injury to Plaintiffs, as confirmed in the Superior Court Judgment and special verdicts.

49.     Pursuant to the principles of *res judicata* and collateral estoppel, the Superior Court Judgment and special verdicts establish the elements of this claim for relief as a matter of law.

50.     WHEREFORE, Plaintiffs pray for a judgment:

### On the First Claim for Relief

        A.    Declaring that the Superior Court Judgment and all related obligations of

Case: 13-03054    Doc# 1    Filed: 04/04/13    Entered: 04/04/13 22:34:55    Page 9 of 41

ADVERSARY COMPLAINT FOR EXCEPTION TO DISCHARGE

1  Defendant to Plaintiffs constitute debts for willful and malicious injury to another within the

2  meaning of 11 U.S.C. § 523(a)(6).

3          B.    Excepting from discharge the Superior Court Judgment and all related

4  obligations of Defendant to Plaintiffs;

5          C.    Granting relief from the Automatic Stay in order that Plaintiffs may

6  enforce the Superior Court Judgment and all related obligations of Defendant to Plaintiffs

7  against property other than property of the estate;

8          D.    For costs of suit; and

9          E.    For such other and further relief as the Court may deem just and proper.

10

11  Dated: April 4, 2013                    KUMAGAI LAW GROUP PC

12

13                                          By:_____
                                                DUANE KUMAGAI

14                                          Co-Counsel for Plaintiffs Colette MacDougall,
                                            Richard W. Colburn, Carol Colburn Grigor and Keith

15                                          W. Colburn

16

17

18

19

20

21

22

23

24

25

26

27

28

10
ADVERSARY COMPLAINT FOR EXCEPTION TO DISCHARGE

# EXHIBIT 1

Case: 13-03054   Doc# 1   Filed: 04/04/13   Entered: 04/04/13 22:34:55   Page 11 of 41


SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| COLETTE McDOUGALL, an individual, ) RICHARD W. COLBURN, an individual, and CAROL COLBURN-HOGEL, an individual, and KEITH W. COLBURN, an individual,<br><br>        Plaintiffs,<br><br>        v.<br><br>ANTHONY PELLICANO, an individual, ) JACQUELINE A. COLBURN, an individual, and DOES 1-50, inclusive,<br><br>        Defendants. | CASE NO.: BC 381720 [Hon. Richard E. Rico, Dept. 17]<br><br>JURY VERDICT FORM NO. 1:<br><br>AFFIRMATIVE DEFENSE – STATUTE OF LIMITATIONS |

1

JURY VERDICT RE: AFFIRMATIVE DEFENSE – STATUTE OF LIMITATIONS

**Special Verdict Form:**
**Affirmative Defense – Statute of Limitations (as against Richard W. Colburn)**

With regard to plaintiff Richard W. Colburn, we answer the questions submitted to us as follows:

1.   Did Jacqueline Colburn prove that Richard W. Colburn's claimed harm occurred before December 4, 2005?

_✓_ Yes ____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions on this form, have the presiding juror sign and date this form, and then proceed to the next special verdict form.

2.   Did Richard W. Colburn prove that prior to December 4, 2005, he did not discover, and did not know of facts that would have caused a reasonable person to suspect, that he had suffered harm that was caused by someone's wrongful conduct?

____ Yes ____ No

Signed: _____
                 Presiding Juror

Dated: _____ 10/19/12 _____

After all verdict forms have been signed, deliver this verdict form to the court attendant.

Special Verdict Form:
Affirmative Defense – Statute of Limitations (as against Carol Colburn Grigor)

With regard to plaintiff Carol Colburn Grigor, we answer the questions submitted to us as follows:

1. Did Jacqueline Colburn prove that Carol Colburn Grigor's claimed harm occurred before December 4, 2005?

___✓___ Yes _____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions on this form, have the presiding juror sign and date this form, and then proceed to the next special verdict form.

2. Did Carol Colburn Grigor prove that prior to December 4, 2005, she did not discover, and did not know of facts that would have caused a reasonable person to suspect, that she had suffered harm that was caused by someone's wrongful conduct?

___✓___ Yes _____ No

Signed: _____
                    Presiding Juror

Dated: _____10/14/12_____

After all verdict forms have been signed, deliver this verdict form to the court attendant.

## Special Verdict Form:
### Affirmative Defense – Statute of Limitations (as against Keith W. Colburn)

With regard to plaintiff Keith W. Colburn, we answer the questions submitted to us as follows:

1.    Did Jacqueline Colburn prove that Keith W. Colburn's claimed harm occurred before December 4, 2005?

___✓ Yes ___ No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions on this form, have the presiding juror sign and date this form, and then proceed to the next special verdict form.

2.    Did Keith W. Colburn prove that prior to December 4, 2005, he did not discover, and did not know of facts that would have caused a reasonable person to suspect, that he had suffered harm that was caused by someone's wrongful conduct?

___✓ Yes ___ No

Signed: _____
                    Presiding Juror

Dated: ___10/14/12___

After all verdict forms have been signed, deliver this verdict form to the court attendant.

Special Verdict Form:
Affirmative Defense – Statute of Limitations (as against Colette McDougall)

With regard to plaintiff Colette McDougall, we answer the questions submitted to us as follows:

1.    Did Jacqueline Colburn prove that Colette McDougall's claimed harm occurred before December 4, 2005?

_✓_ Yes ____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions on this form, have the presiding juror sign and date this form, and then proceed to the next special verdict form.

2.    Did Colette McDougall prove that prior to December 4, 2005, she did not discover, and did not know of facts that would have caused a reasonable person to suspect, that she had suffered harm that was caused by someone's wrongful conduct.

_✓_ Yes ____ No

**If you answered "yes" to question 2 for any of the plaintiffs, proceed to the next set of jury verdict forms for each plaintiff for whom you answered yes to question 2.**

Signed: _____
                Presiding Juror

Dated: ___10/14/12___

After all verdict forms have been signed, deliver this verdict form to the court attendant.

# EXHIBIT 2

Case: 13-03054   Doc# 1   Filed: 04/04/13   Entered: 04/04/13 22:34:55   Page 17 of 41



LOS A        SUPERIOR COURT

OCT 1 9 2012

JOHN A. CLAR...        ...K
BY ANTONIO DIMAS/KENNED

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| COLETTE McDOUGALL, an individual, ) RICHARD W. COLBURN, an ) individual, and CAROL COLBURN- ) HOGEL, an individual, and KEITH W. ) COLBURN, an individual, ) <br><br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ANTHONY PELLICANO, an individual, ) JACQUELINE A. COLBURN, an ) individual, and DOES 1-50, inclusive, ) <br> ) <br> Defendants. ) <br> ) <br> ) <br> ) <br>_____ ) | CASE NO.: BC 381720 [Hon. Richard E. Rico, Dept. 17] <br><br> JURY VERDICT FORM NO. 2: <br><br> VIOLATION OF STATUTE |

1

JURY VERDICT RE: VIOLATION OF STATUTE

Special Verdict Form:
Plaintiff Richard W. Colburn's Cause of Action for Violation of Statute

With regard to plaintiff Richard W. Colburn, we answer the questions submitted to us as follows:

1.    Did Anthony Pellicano on behalf of Jacqueline Colburn intentionally eavesdrop on or record Richard W. Colburn's conversation by using an electronic device?

_✓_ Yes ____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions on this form, have the presiding juror sign and date this form, and then proceed to the next special verdict form.

2.    Did Richard W. Colburn have a reasonable expectation that the conversation was not being overheard or recorded?

_✓_ Yes ____ No

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions on this form, have the presiding juror sign and date this form, and then proceed to the next special verdict form.

3.    Did Anthony Pellicano on behalf of Jacqueline Colburn have the consent of all parties to the conversation to eavesdrop on or record it?

____ Yes _✓_ No

If your answer to question 3 is no, then answer question 4. If you answered yes, stop here, answer no further questions on this form, have the presiding juror sign and date this form, and then proceed to the next special verdict form.

[continued on next page]

4. How many of Richard W. Colburn's telephone communications to or from the telephone lines at 1120 La Collina Drive were eavesdropped upon, recorded, and/or wiretapped by Anthony Pellicano acting on Jacqueline Colburn's behalf?

Insert number of calls here: ~~524~~ 289

Next, take the number of calls you wrote as your answer to question 4, and multiply it by $5,000 to find the total amount of statutory penalty awardable to plaintiff Richard W. Colburn as follows:

289
(number of calls) multiplied b y $5,000 = $ 1,445,000.00
(awarded to Richard W. Colburn)

Signed: _____
Presiding Juror

Dated: 10/19/12

After all verdict forms have been signed, deliver this verdict form to the court attendant.

Special Verdict Form:
Plaintiff Carol Colburn Grigor's Cause of Action for Violation of the Statute

With regard to plaintiff Carol Colburn Grigor, we answer the questions submitted to us as follows:

1.    Did Anthony Pellicano on behalf of Jacqueline Colburn intentionally eavesdrop on or record Carol Colburn Grigor's conversation by using an electronic device?

__✓__ Yes ____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions on this form, have the presiding juror sign and date this form, and then proceed to the next special verdict form.

2.    Did Carol Colburn Grigor have a reasonable expectation that the conversation was not being overheard or recorded?

__✓__ Yes ____ No

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions on this form, have the presiding juror sign and date this form, and then proceed to the next special verdict form.

3.    Did Anthony Pellicano on behalf of Jacqueline Colburn have the consent of all parties to the conversation to eavesdrop on or record it?

____ Yes __✓__ No

If your answer to question 3 is no, then answer question 4. If you answered yes, stop here, answer no further questions on this form, have the presiding juror sign and date this form, and then proceed to the next special verdict form.

[continued on next page]

4.   How many of Carol Colburn Grigor's telephone communications to or from the telephone lines at 1120 La Collina Drive were eavesdropped upon, recorded, and/or wiretapped by Anthony Pellicano acting on Jacqueline Colburn's behalf?

Insert number of calls here: ___59___

Next, take the number of calls you wrote as your answer to question 4, and multiply it by $5,000 to find the total amount of statutory penalty awardable to plaintiff Carol Colburn Grigor as follows:

___59___   multiplied by $5,000 = $___295,000.00___
(number of calls)                              (awarded to Carol Colburn Grigor)

Signed: _____
                 Presiding Juror

Dated: ___1/9/12___

After all verdict forms have been signed, deliver this verdict form to the court attendant.



**Special Verdict Form:**
**Plaintiff Keith W. Colburn's Cause of Action for Violation of Statute**

With regard to plaintiff Keith W. Colburn, we answer the questions submitted to us as follows:

1.     Did Anthony Pellicano on behalf of Jacqueline Colburn intentionally eavesdrop on or record Keith W. Colburn's conversation by using an electronic device?

✓ Yes _____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions on this form, have the presiding juror sign and date this form, and then proceed to the next special verdict form.

2.     Did Keith W. Colburn have a reasonable expectation that the conversation was not being overheard or recorded?

✓ Yes _____ No

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions on this form, have the presiding juror sign and date this form, and then proceed to the next special verdict form.

3.     Did Anthony Pellicano on behalf of Jacqueline Colburn have the consent of all parties to the conversation to eavesdrop on or record it?

_____ Yes ✓ No

If your answer to question 3 is no, then answer question 4. If you answered yes, stop here, answer no further questions on this form, have the presiding juror sign and date this form, and then proceed to the next special verdict form.

[continued on next page]

4. How many of Keith W. Colburn's telephone communications to or from the telephone lines at 1120 La Collina Drive were eavesdropped upon, recorded, and/or wiretapped by Anthony Pellicano acting on Jacqueline Colburn's behalf?

Insert number of calls here: ___135___

Next, take the number of calls you wrote as your answer to question 4, and multiply it by $5,000 to find the total amount of statutory penalty awardable to plaintiff Keith W. Colburn as follows:

___135___          multiplied by $5,000 = $ ___675,000.00___
(number of calls)                              (awarded to Keith W. Colburn)

Signed: _____
                 Presiding Juror

Dated: ___10/19/12___

After all verdict forms have been signed, deliver this verdict form to the court attendant.

Special Verdict Form:
Plaintiff Colette McDougall's Cause of Action for Violation of Statute

With regard to plaintiff Colette McDougall, we answer the questions submitted to us as follows:

1. Did Anthony Pellicano on behalf of Jacqueline Colburn intentionally eavesdrop on or record Colette McDougall's conversation by using an electronic device?

 ✓ Yes ____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions on this form, have the presiding juror sign and date this form, and then proceed to the next special verdict form.

2. Did Colette McDougall have a reasonable expectation that the conversation was not being overheard or recorded?

____ ✓ Yes ____ No

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions on this form, have the presiding juror sign and date this form, and then proceed to the next special verdict form.

3. Did Anthony Pellicano on behalf of Jacqueline Colburn have the consent of all parties to the conversation to eavesdrop on or record it?

____ Yes ✓ No

If your answer to question 3 is no, then answer question 4. If you answered yes, stop here, answer no further questions on this form, have the presiding juror sign and date this form, and then proceed to the next special verdict form.

[continued on next page]

4. How many of Colette McDougall's telephone communications to or from the telephone lines at 1120 La Collina Drive were eavesdropped upon, recorded, and/or wiretapped by Anthony Pellicano acting on Jacqueline Colburn's behalf?

Insert number of calls here: _176_

Next, take the number of calls you wrote as your answer to question 4, and multiply it by $5,000 to find the total amount of statutory penalty awardable to plaintiff Colette McDougall as follows:

_176_ multiplied b y $5,000 = $ _880,000.00_
(number of calls)                              (awarded to Colette McDougall)

Signed: _____
              Presiding Juror

Dated: _6/19/12_

After all verdict forms have been signed, deliver this verdict form to the court attendant.

# EXHIBIT 3



LOS...

OCT 10 2012

JOHN A. CLARK ...
BY ANTONIO O...., DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

COLETTE McDOUGALL, an individual, )
RICHARD W. COLBURN, an )
individual, and CAROL COLBURN- )
HOGEL, an individual, and KEITH W. )
COLBURN, an individual, )
                              )
       Plaintiffs, )
                              )
    v. )
                              )
ANTHONY PELLICANO, an individual, )
JACQUELINE A. COLBURN, an )
individual, and DOES 1-50, inclusive, )
                              )
       Defendants. )
                              )
                              )

CASE NO.: BC 381720 [Hon. Richard E. Rico, Dept. 17]

JURY VERDICT FORM NO. 3:

INVASION OF PRIVACY

1

JURY VERDICT RE: INVASION OF PRIVACY

Case: 13-03054   Doc# 1   Filed: 04/04/13   Entered: 04/04/13 22:34:55   Page 28 of 41

Verdict Form VF-1800: Privacy–Intrusion into Private Affairs (as to Richard W. Colburn)

---

We answer the questions submitted to us as follows:

1. Did Richard W. Colburn have a reasonable expectation of privacy in his telephone calls to and from the residence and home office of his father Richard D. Colburn?

___✓ Yes ___ No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

2. Did Anthony Pellicano on behalf of Jacqueline Colburn intentionally intrude in Richard W. Colburn's telephone calls to and from the residence and home office of his father Richard D. Colburn?

___✓ Yes ___ No

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

3. Would Anthony Pellicano's intrusion on behalf of Jacqueline Colburn be highly offensive to a reasonable person?

___✓ Yes ___ No

If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

4. Was Anthony Pellicano's conduct on behalf of Jacqueline Colburn a substantial factor in causing harm to Richard W. Colburn?

___✓ Yes ___ No

If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

[continued on next page]

5. What are Richard W. Colburn's damages?

Past noneconomic loss, including emotional distress: $ 150,000.00

Signed: _____
　　　　　Presiding Juror

Dated: 10/19/12

After all verdict forms have been signed, deliver this verdict form to the court attendant.

Verdict Form VF-1800: Privacy–Intrusion into Private Affairs (as to Carol Colburn Grigor)

_____

We answer the questions submitted to us as follows:

1. Did Carol Colburn Grigor have a reasonable expectation of privacy in her telephone calls to and from the residence and home office of her father Richard D. Colburn?

   ____✓ Yes ____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

2. Did Anthony Pellicano on behalf of Jacqueline Colburn intentionally intrude in Carol Colburn Grigor's telephone calls to and from the residence and home office of her father Richard D. Colburn?

   ____✓ Yes ____ No

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

3. Would Anthony Pellicano's intrusion on behalf of Jacqueline Colburn be highly offensive to a reasonable person?

   ____✓ Yes ____ No

If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

4. Was Anthony Pellicano's conduct on behalf of Jacqueline Colburn a substantial factor in causing harm to Carol Colburn Grigor?

   ____✓ Yes ____ No

If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

[continued on next page]

5. What are Carol Colburn Grigor's damages?

Past noneconomic loss, including emotional distress: $ _150,000.00_

Signed: _____
          Presiding Juror

Dated: _10/19/12_

After all verdict forms have been signed, deliver this verdict form to the court attendant.

Verdict Form VF-1800: Privacy–Intrusion into Private Affairs (as to Keith W. Colburn)

---

We answer the questions submitted to us as follows:

1. Did Keith W. Colburn have a reasonable expectation of privacy in his telephone calls to and from the residence and home office of his father Richard D. Colburn?

___✓___ Yes _____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

2. Did Anthony Pellicano on behalf of Jacqueline Colburn intentionally intrude in Keith W. Colburn's telephone calls to and from the residence and home office of his father Richard D. Colburn?

___✓___ Yes _____ No

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

3. Would Anthony Pellicano's intrusion on behalf of Jacqueline Colburn be highly offensive to a reasonable person?

___✓___ Yes _____ No

If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

4. Was Anthony Pellicano's conduct on behalf of Jacqueline Colburn a substantial factor in causing harm to Keith W. Colburn?

___✓___ Yes _____ No

If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

[continued on next page]

5. What are Keith W. Colburn's damages?

Past noneconomic loss, including emotional distress: $ __/50,000. 00__

11- 1

Signed: _____
             Presiding Juror

Dated: __10/19/12__

After all verdict forms have been signed, deliver this verdict form to the court attendant.

Verdict Form VF-1800: Privacy–Intrusion into Private Affairs (as to Colette McDougall)

We answer the questions submitted to us as follows:

1. Did Colette McDougall have a reasonable expectation of privacy in her telephone calls to and from the residence and home office of her Richard D. Colburn?

_<u>✓</u>_ Yes _____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

2. Did Anthony Pellicano on behalf of Jacqueline Colburn intentionally intrude in Colette McDougall's telephone calls to and from the residence and home office of her employer Richard D. Colburn?

_<u>✓</u>_ Yes _____ No

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

3. Would Anthony Pellicano's intrusion on behalf of Jacqueline Colburn be highly offensive to a reasonable person?

_<u>✓</u>_ Yes _____ No

If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

4. Was Anthony Pellicano's conduct on behalf of Jacqueline Colburn a substantial factor in causing harm to Colette McDougall?

_<u>✓</u>_ Yes _____ No

If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

[continued on next page]

5. What are Colette McDougall's damages?

Past noneconomic loss, including emotional distress: $ _150, 000.00_

$| | - |$

Signed: _____
      Presiding Juror

Dated: _10/19/12_

After all verdict forms have been signed, deliver this verdict form to the court attendant.

# EXHIBIT 4

1

2

3

4

FILED
LOS ANGELES SUPERIOR COURT

5

NOV 1 9 2012

6

JOHN A. CLARKE, CLERK
BY ANTONIO ORTIZ, DEPUTY

7

8

SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

FOR THE COUNTY OF LOS ANGELES

10

11

12

13

COLETTE McDOUGALL, an individual, )
RICHARD W. COLBURN, an )
individual, and CAROL COLBURN- )
HOGEL, an individual, and KEITH W. )
COLBURN, an individual, )

CASE NO.: BC 381720

[Assigned to Judge Richard E. Rico, Dept. 17]

[PROPOSED] JUDGMENT AGAINST
JACQUELINE A. COLBURN BASED ON
JURY VERDICTS AND DEFAULT
JUDGMENT AGAINST ANTHONY
PELLICANO

14

Plaintiffs,
v.

15

16

17

ANTHONY PELLICANO, an individual, )
JACQUELINE A. COLBURN, an )
individual, and DOES 1-50, inclusive, )

Defendants.

18

19

20

21

22

23

24

25

26

27

28

1

[PROPOSED] JUDGMENT AGAINST JACQUELINE A. COLBURN BASED ON JURY
VERDICTS AND DEFAULT JUDGMENT AGAINST ANTHONY PELLICANO

1     This action came on regularly for trial against defendant Jacqueline A. Colburn on

2  October 9, 2012, in Department 17 of the Superior Court, the Hon. Richard E. Rico Judge

3  presiding; the plaintiffs Colette McDougall, Richard W. Colburn, Carol Colburn Grigor (f/k/a

4  Carol Colburn Hogel), and Keith W. Colburn (collectively, "Plaintiffs") appearing by attorneys

5  Lawrence Segal and Wayne D. Skigen of Segal Skigen LLP, and the defendant Jacqueline A.

6  Colburn appearing by attorneys Stanley W. McKiernan and Elham Ghaemmaghami of the

7  McKiernan Law Firm and attorney David J. Mirback of the Mirback Law Firm.

8          A jury was regularly impaneled and sworn. Witnesses were sworn and testified.

9  Evidence and arguments of counsel were presented, the jury was duly instructed by the Court,

10  and the causes of action were submitted to the jury (with directions to return verdicts on special

11  issues). The jury deliberated and thereafter returned into court with its verdicts on three verdict

12  forms, finding that Plaintiffs' claims were not barred by the statute of limitations, that Jacqueline

13  A. Colburn was liable to each of the Plaintiffs on their cause of action for common law invasion

14  of privacy, and that Jacqueline A. Colburn was liable to each of the Plaintiffs on their statutory

15  cause of action for invasion of privacy pursuant to California Penal Code §§ 637.2(a).

16          As to defendant Anthony Pellicano, the Court finds that Anthony Pellicano was properly

17  served with a copy of the Summons on First Amended Complaint and First Amended Complaint

18  filed by Plaintiffs in this action, that Anthony Pellicano failed to answer the First Amended

19  Complaint or appear and defend the action within the time allowed by law, and that Anthony

20  Pellicano's default was entered by the clerk upon Plaintiffs' application.

21          In connection with the requested default judgment against Anthony Pellicano, the Court

22  considered: (a) Plaintiffs' Request for Entry of Default Judgment; (b) Plaintiffs' Summary of

23  Case in Support of Entry of Default Judgment Against Anthony Pellicano; and (c) the testimony

24  given and the exhibits admitted into evidence at the trial of Jacqueline Colburn (in lieu of

25  additional declarations, affidavits or live testimony duplicative of said trial testimony and

26  evidence), and (d) other items of which Plaintiffs requested that the Court consider and/or take

27  judicial notice.

28          It appearing by reason of said verdicts and said evidence that each of the Plaintiffs is

[PROPOSED] JUDGMENT AGAINST JACQUELINE A. COLBURN BASED ON JURY

1   entitled to judgment in his or her favor and against defendants Jacqueline A. Colburn and

2   Anthony Pellicano,

3         NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that:

4        1.     Plaintiff Richard W. Colburn shall have judgment against, and shall recover from,

5   defendants Jacqueline A. Colburn and Anthony Pellicano, jointly and severally, the sum of

6   $1,595,000, with interest thereon at the rate of ten percent (10%) per annum from the date of the

7   entry of this judgment until paid;

8        2.     Plaintiff Carol Colburn Grigor (formerly known as Carol Colburn Hogel) shall

9   have judgment against, and shall recover from, defendants Jacqueline A. Colburn and Anthony

10   Pellicano, jointly and severally, the sum of $445,000, with interest thereon at the rate of ten

11   percent (10%) per annum from the date of the entry of this judgment until paid;

12        3.     Plaintiff Keith W. Colburn shall have judgment against, and shall recover from,

13   defendants Jacqueline A. Colburn and Anthony Pellicano, jointly and severally, the sum of

14   $825,000, with interest thereon at the rate of ten percent (10%) per annum from the date of the

15   entry of this judgment until paid;

16        4.     Plaintiff Colette McDougall shall have judgment against, and shall recover from,

17   defendants Jacqueline A. Colburn and Anthony Pellicano, jointly and severally, the sum of

18   $1,030,000, with interest thereon at the rate of ten percent (10%) per annum from the date of the

19   entry of this judgment until paid; and

20        5.     Plaintiffs shall have judgment against, and shall recover from, defendants

21   Jacqueline A. Colburn and Anthony Pellicano, jointly and severally, the additional sum of

22   $77,343.29, for recoverable costs and disbursements.

23

24

25   DATED: _____   BY: _____

26                                  Hon. Richard E. Rico
                                 Judge of the Superior Court

27

28

[PROPOSED] JUDGMENT AGAINST JACQUELINE A. COLBURN BASED ON JURY

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: Kumagai Law Group, PC, 1901 Avenue of the Stars, Suite 1900, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*):  **ADVERSARY COMPLAINT FOR EXCEPTION TO DISCHARGE OF DEBT FOR WILLFUL AND MALICIOUS INJURY TO ANOTHER (11 U.S.C. § 523(a)(6))** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 4, 2013**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | |
|---|---|
| Todd J. Cleary | cleary1@pacbell.net, jslatertclaw@gmail.com |
| Jay D. Crom | jcrom@bachcrom.com |
| Duane Kumagai | dkumagai@klgla.com, mshabpareh@klgla.com |
| Jeffry Locke | JLtrustee@aol.com, ca61@ecfcbis.com |
| Office of the U.S. Trustee / SR | USTPRegion17.SF.ECF@usdoj.gov, ltroxas@hotmail.com |
| Reidun Stromsheim | rstromsheim@stromsheim.com |

☐   Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On April 4, 2013, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| | |
|---|---|
| **DEBTOR** | Capital One, N.A. |
| Jacqueline Ann Colburn | Bass & Associates, P.C. |
| AKA Jacqueline Ann Gasser | 3936 E. Ft. Lowell Road, Suite #200 |
| 336 Bon Air Ctr | Tucson, AZ 85712 |
| Greenbrae, CA, 94904 | |
| | |
| Lawrence Segal | |
| Segal Skigen LLP | |
| 9595 Wilshire Blvd. #201 | |
| Los Angeles, CA 90212-2504 | |

☐   Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| April 4, 2013 | Melody Shabpareh | */s/ Melody Shabpareh* |
| *Date* | *Printed Name* | *Signature* |